**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 96-21156**
_____

**TARRANT DISTRIBUTORS INCORPORATED,**

**Plaintiff-Appellee,**

**VERSUS**

**HEUBLEIN INCORPORATED,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
October 27, 1997

Before DeMOSS and DENNIS, Circuit Judges, and LEE,[*] District Judge.

DeMOSS, Circuit Judge:

This appeal involves the interpretation of a settlement agreement. Two issues are presented. First, we must review the district court's interpretation of the parties' agreements requiring confidential treatment of information given by each of them to an accounting firm. Second, we must inquire as to whether the district court properly refused to imply a condition precedent in the parties' settlement agreement. We affirm the district court on both issues.

_____

[*] District Judge of the Southern District of Mississippi, sitting by designation.

## I.    Background

Heublein, Inc. ("Heublein") is a nationwide manufacturer, importer, seller, and distributor of well-known brands of wines and distilled spirits.  Tarrant Distributors, Inc. ("Tarrant") is a wholesale distributor of wines and distilled spirits.  The two companies agreed that Tarrant would distribute certain Heublein brands.  However, problems arose and as a result Tarrant filed a lawsuit against Heublein in Harris County, Texas.  Heublein removed the case to federal court, and the case was subsequently sent to mediation.  The mediation resulted in a settlement agreement between Tarrant and Heublein.

Under the terms of the settlement agreement, Tarrant was to pay a fixed sum to Heublein, and Heublein would pay to Tarrant the amount of Tarrant's net loss.  The parties agreed to a definition of "net loss," and they agreed to engage one of several specified certified public accounting firms to collect information from the two companies and make a determination of the net loss based on the agreed-upon formula.  The settlement agreement provided that the "CPA Firm shall execute a Confidentiality Agreement with respect to all such information, data or documentation in form and content reasonably acceptable to the parties."  The settlement agreement further specified that the CPA firm's determination was to be "final and binding upon the parties."

Coopers & Lybrand ("Coopers") was hired by Tarrant and Heublein to make the determination of Tarrant's net loss.  The engagement letter provided to the parties by Coopers stated:

> Our personnel understand that they are subject to and will abide by any reasonable confidentiality restrictions and protective orders. In addition, we always treat as confidential any documents or other information made available to us in connection with these kinds of engagements and will take appropriate steps to segregate all materials related to our work in this engagement from other files in our offices. Unless required by law, we will not disclose or divulge documents or information not already available in the public domain, which are provided to us by you or your clients except as necessary to explain our conclusion(s), if requested to the mediator or a trier of fact.

The record contains no evidence of any other agreements regarding the confidential treatment of information and documents provided by the parties.

After Coopers rendered its finding that Tarrant's loss amounted to $860,800, Heublein challenged the validity of the figure. Heublein claimed that the calculation was in error and asked for satisfaction that the calculation was performed in accordance with the formula specified by the settlement agreement. Tarrant protested that the determination was "final and binding." Coopers subsequently affirmed that it had applied the proper formula and offered to discuss the issue in a forum mutually agreed upon by Tarrant and Heublein.

Both Tarrant and Heublein sought to enforce the settlement agreement in the federal district court. Heublein requested access to the working papers Cooper used in making its determination of Tarrant's net loss. The motion was denied. Tarrant sought payment under the terms of the settlement agreement, and its motion was granted. Subsequent motions by Heublein to correct the district

-3-

court's judgment and to obtain a new trial were also denied. Heublein now appeals and seeks a reversal of the judgment of the district court and remand to the district court with instructions to review Coopers' working papers to determine whether Coopers failed to comply with the terms of the settlement agreement or made a material miscalculation.

## II. *Standard of Review*

The construction of an unambiguous contract is reviewed de novo, but while "interpretation of an unambiguous contract is a question of law, clear error is the standard of review when a district court uses extrinsic evidence to interpret an ambiguous contract." *In re Raymark Indus., Inc.*, 831 F.2d 550, 553 (5th Cir. 1987).

## III. *Confidentiality Provisions of the Settlement Agreement*

In both the district court's March 27, 1996 "Memorandum and Order" and its November 8, 1996 "Memorandum and Opinion," the district court stated that the settlement agreement between Heublein and Tarrant required the CPA firm to adhere to confidentiality restrictions which prohibited disclosure of "documents or information of one party to the other party."

Heublein challenges this characterization of its agreement with Tarrant, arguing that there was no such agreement governing confidentiality between Heublein and Tarrant, and that this fundamental error undermines the district court's entire

-4-

disposition of the case. Heublein notes that the settlement agreement provides only that the "CPA Firm shall execute a Confidentiality Agreement," without specifying the contemplated nature or scope of any such confidentiality agreement. Heublein then reasons that the focus of the settlement agreement language is on the CPA firm, not the parties themselves, and that the purpose of the provision is to prevent the CPA firm from divulging information received from Heublein and Tarrant to the public or other third parties. Finally, Heublein notes that there is no evidence in the record that any confidentiality agreement ever was executed other than that contained in the Coopers engagement letter.

Tarrant relies upon the text of the settlement agreement and the engagement letter, the relevant portions of which are quoted above. Tarrant claims in its brief that "Tarrant and Heublein intended for Coopers to be and Coopers acknowledged that it is subject to confidentiality restrictions which precluded it from disclosing or divulging documents or information provided by the parties to Coopers without their mutual consent." Tarrant further notes that because the settlement agreement disallowed ex parte communications from the parties to the CPA firm, any ex parte communication requesting the disclosure of documents or information provided by the other party would run afoul of the settlement agreement, and thus be invalid.[1]

_____

[1] Heublein's response to this argument is that the portion of the settlement agreement prohibiting ex parte communications pertains only to the period of time during which the CPA firm is

-5-

Heublein's point with regard to the nonspecificity of the language in the settlement agreement is well taken. The district court's conclusion that the settlement agreement dictated that the CPA firm could not disclose one party's information to the other is not unambiguously supported by the settlement agreement. However, neither the parties nor the district court sufficiently analyzed the provision in the Coopers engagement letter -- the only confidentiality provision at play in this case -- which states that "unless required by law, [Coopers] will not disclose or divulge documents or information not already available in the public domain," which were provided to Coopers by Heublein and Tarrant, or their clients, "except as necessary to explain our conclusion(s), if requested to the mediator or a trier of fact." Heublein and Tarrant agreed to this provision, and it is the only agreement between them regarding confidentiality of materials provided to Coopers. Both Heublein and Tarrant contend that this language unambiguously supports their positions.

Heublein's position is that the engagement letter expressly states that Coopers would not keep documents or information provided to it by Heublein and Tarrant confidential "if necessary to explain [its] conclusion(s), if requested to the mediator or a trier of fact." Heublein insists that this language covers the

_____

conducting its investigation and making its determination. Heublein contends that the provision was not intended to prevent subsequent review of the CPA firm's determination.

present scenario.[2]  Tarrant, on the other hand, contends that the engagement letter language is evidence of the parties' intent that the CPA firm not disclose information to the parties without their mutual consent, and that there is no exception written into the agreement to allow for the kind of review proposed by Heublein.[3]

If the language in the letter is unambiguous, then its interpretation is subject to de novo review.  *In re Raymark*, 831 F.2d at 553.  The key language here is the meaning of "if requested to the mediator or a trier of fact."  The presence of the word "to" makes the sentence nonsensical, and as a result, both parties have offered interpretations of the text of the agreements that appear, at first blush, to be plausible.

We find that the engagement letter unambiguously supports one interpretation because the other is unreasonable. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) ("The failure to include more express language of the parties' intent does not create an ambiguity when only one reasonable interpretation exists.").  This seems to have been the unarticu-lated thrust behind the district court's endorsement of Tarrant's view.  The settlement agreement's contemplation of a

---

[2]  Heublein's interpretation would have been unambiguously conveyed by the letter if there were a comma after the word "requested," such that the letter read: "if necessary to explain our conclusion(s), if requested, to the mediator or a trier of fact."

[3]  Tarrant's interpretation would be more clearly supported by the letter if the word "by" were used instead of the word "to," such that the letter read: "if necessary to explain our conclusion(s), if requested by the mediator or a trier of fact."

future confidentiality agreement and the parties' agreement that the CPA firm's determination would be final and binding support the district court's view that the parties sought "to avoid continued litigation and to ensure continued confidentiality," and therefore agreed unconditionally to rely upon the CPA firm's determination of Tarrant's net loss. In this context, it makes little sense to read the agreement in the manner proposed by Heublein.

Heublein's interpretation is an unreasonable interpretation of the engagement letter, and therefore the letter unambiguously provides that the materials submitted to Coopers by each party were intended to be kept confidential, that is, not shared with the other party.

## IV. *Implied Condition Precedent*

Heublein claims that because Coopers incorrectly applied the net loss formula, its obligation to pay under the settlement agreement never arose. Heublein argues that a condition precedent should be implied from the terms of the settlement agreement because the language and the nature of the agreement reflect the parties' intent for a condition to occur (that is, that the CPA firm would correctly apply the net loss formula) before the obligations to pay under the agreement arose, and that the parties would have inserted such an express condition had they known what the future held. Heublein claims that the most basic goal of contract law is to protect the justified expectations of the parties, and that an implied condition is appropriate in this case,

where circumstances changed unforeseeably and the contract terms are insufficient to govern the parties' relationship. *See Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 595-96 (7th Cir. 1991). Were it otherwise, Heublein reasons, neither party would have any recourse to contest a mistaken application of the formula. Thus, Heublein posits that a faithful application of the net loss formula was a "basic assumption" of the settlement agreement. *See McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 478 (Tex. App.—El Paso 1993, no writ) (finding authenticity to be "understood to be a term" of a contract to sell a Van Gogh painting).

Heublein contends that because the settlement agreement contained this implied condition precedent, the district court abused its discretion in refusing to allow Heublein to gain access to Coopers' working papers. Rule 26(b) of the Federal Rules of Civil Procedure permits discovery of relevant nonprivileged matters, and Coopers' working papers would be relevant to determining whether the settlement agreement formula had been correctly applied. *See Whalen v. Carter*, 954 F.2d 1087, 1098 n.11 (5th Cir. 1992).

Tarrant, on the other hand, argues that no condition precedent should be implied. According to this argument, Tarrant's promise to pay a fixed sum to Heublein and Heublein's promise to pay Tarrant's net loss as determined by a CPA firm were unconditional. The parties agreed that the CPA firm's determination would be final and binding, regardless of the outcome. Further, as was noted by

-9-

the district court, the agreement was not made conditional upon the "proper" application of the net loss formula. The very fact that Heublein and Tarrant had widely varying claims as to the amount of Tarrant's net loss meant that there was a possibility that one or both of the parties would be dissatisfied with the CPA firm's determination. Thus, an unfavorable outcome could not have been unforeseeable, and therefore a condition precedent cannot be implied in the settlement agreement.

The district court held that the settlement agreement's use of the terms "final and binding" meant that both parties "gave up the right to probe the correctness of Coopers & Lybrand's determination" unless Heublein presented evidence of "fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment," **Westech Eng'g, Inc. v. Clearwater Constructors, Inc.**, 835 S.W.2d 190, 203 (Tex. App.—Austin 1992, no writ), or evidence that there was an undisputed mistake of fact in the determination. The district court reasoned that the parties "provided for a binding decision by a neutral party of a certain reputation and caliber because the parties could not agree on the net loss number, to avoid continued litigation and to ensure continued confidentiality."

The district court correctly refused to imply a condition precedent in the settlement agreement. An error in the process of computing the net loss under the formula specified in the settlement agreement was certainly a foreseeable event, and the settlement agreement between Heublein and Tarrant did not provide

-10-

any review procedure. Rather, it explicitly stated that the CPA firm's determination would be "final and binding upon the parties." Because there is no implied condition precedent, and because Heublein has not proven that it is entitled to discovery of the working papers on any other ground, the district court was correct to refuse Heublein's request for access to Coopers's working papers.

## V. Conclusion

The difficulties in this case arise from the failure of the parties to follow through on their intention to execute a separate confidentiality agreement and the awkward phrasing of the confidentiality provision of the engagement letter from Coopers & Lybrand. However, we have determined that there was no ambiguity in the engagement letter that might create a fact issue as to the intent of the parties regarding the resolution of potential disputes over the CPA firm's determination of the amount of Tarrant's net loss. Because the parties agreed generally that the information would be kept confidential and because the settlement agreement states that the CPA firm's determination will be "final and binding," Heublein is without recourse to challenge Coopers' determination of Heublein's liability to Tarrant.

The judgment of the district court is AFFIRMED.